984 F.2d 35
 24 Fed.R.Serv.3d 1139
 Abraham J. HIRSCHFELD and William M. Van Luvender,
Plaintiffs-Appellees,
v.
The BOARD OF ELECTIONS IN the CITY OF NEW YORK and Kathleen
M. Wagner, Jeannette Gadson, Vincent J. Cuttita, Maria
Echaveste, Ferdinand C. Marchi, Alice Sachs, Anthony
Sadowski, George M. Spanakos, Gertrude Strohm, Vincent J.
Velella, as Commissioners of the Board of Elections in the
City of New York, as Members of, and Constituting the Said
Board of Elections, Defendants-Appellants.
 Docket No. 92-9190.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 30, 1992.
Decided Oct. 30, 1992.
Opinion Filed Jan. 21, 1993.
 
 Paul Marks, Asst. Corp. Counsel, New York City (O. Peter Sherwood, Corp. Counsel, City of New York, of counsel), for appellants.
 Herbert Rubin, New York City (Herzfeld & Rubin, of counsel), for appellees.
 Before: MESKILL, Chief Judge, WINTER, Circuit Judge, and RESTANI,* Judge.
 MESKILL, Chief Judge:
 
 
 1
 This case involves motions for a stay and for an expedited appeal of an order and judgment of the United States District Court for the Southern District of New York, Knapp, J., directing defendant-appellant Board of Elections in the City of New York (Board of Elections) to deem valid the independent nominating petitions of plaintiff-appellee Abraham J. Hirschfeld, a candidate for the House of Representatives of the United States Congress. Hirschfeld claimed in the district court that the Board of Elections, by invalidating his nominating petitions and refusing to put his name on the ballot, had violated his civil rights under 42 U.S.C. § 1983 and his rights to due process and equal protection under the First and Fourteenth Amendments to the United States Constitution. William M. Van Luvender, who had signed Hirschfeld's nominating petition, similarly claimed a violation of his civil rights under 42 U.S.C. § 1983 and his rights to due process and equal protection under the First and Fourteenth Amendments. The district court granted Hirschfeld's requested relief on September 21, 1992, and judgment was entered on September 30, 1992. On October 28, 1992, six days before election day, the Board of Elections filed its notice of appeal and motions for a stay of the order pending appeal and for an expedited appeal. On October 30, 1992, we denied both motions by summary order and now sanction defendant-appellant Board of Elections for misuse of the judicial process.
 
 BACKGROUND
 
 2
 On August 27, 1992, at approximately 11:40 p.m., Hirschfeld filed independent nominating petitions for his candidacy for United States Representative from the 14th Congressional District in the November 3, 1992 General Election. Before leaving the Board of Elections office, Hirschfeld asked the accepting clerk whether there were any further formalities expected of him, and he was told that there were none. On August 28, 1992, the Board of Elections mailed Hirschfeld a notice informing him that the last day to accept or decline the nomination was August 31, 1992. New York Election Law § 6-144 requires that Boards of Elections notify a candidate by mail forthwith of the last day to decline a nomination. New York Election Law § 1-106(1) provides that a candidate's failure to file timely a nomination acceptance is a "fatal defect." On September 1, 1992, Hirschfeld received the letter from the Board of Elections and on September 2, 1992, he filed an acceptance certificate.
 
 
 3
 The Board of Elections immediately ruled that Hirschfeld's nominating petitions were invalid because of his failure to file timely an acceptance. On September 4, 1992, Hirschfeld commenced a suit in the United States District Court for the Southern District of New York against the Board of Elections claiming that his civil rights under 42 U.S.C. § 1983 and his rights to due process and equal protection under the First and Fourteenth Amendments to the United States Constitution had been violated by the Board of Elections' invalidation of his petitions. The Board of Elections moved on September 15, 1992 to dismiss the complaint for failure to state a claim upon which relief could be granted.
 
 
 4
 On September 21, 1992, the district court denied the motion to dismiss, conducted an evidentiary hearing, and granted the relief sought in Hirschfeld's complaint, directing the Board of Elections to place Hirschfeld on the November 3, 1992 ballot. The district court held that the application in this instance of the New York Election Law requirement of a certificate of acceptance for independent nominations for office was an unconstitutional burden on Hirschfeld's access to the ballot because he was not given an appropriate opportunity to file the certificate of acceptance. Hirschfeld v. Board of Elections, 799 F.Supp. 394, 395 (S.D.N.Y.1992). Judgment was entered by the district court on September 30, 1992.
 
 
 5
 For the next four weeks, Hirschfeld spent money and time moving forward with his campaign, and the Board of Elections corresponded by letter with Hirschfeld concerning such matters as the spelling of his name on the ballot, all as if the September 30, 1992 judgment was to be the final disposition of the matter. On October 8, 1992, Hirschfeld's attorneys mailed a letter to the Board of Elections granting them permission to shorten Hirschfeld's name if necessary to fit it on the ballot. On October 9, 1992, Kathy King, general counsel to the Board of Elections, wrote back confirming the authorization to shorten Hirschfeld's name, stating:
 
 
 6
 It is further acknowledged that, even though the Independent Nominating Petitions which placed Mr. Hirschfeld on the ballot were circulated under the name of "ABRAHAM J. HIRSCHFELD", Mr. Hirschfeld's petitions and/or candidacy will not be invalidated in the event that the name ABE HIRSCHFELD is used because of the aforementioned reasons.
 
 
 7
 On October 26, 1992, Hirschfeld's attorneys again corresponded with the Board of Elections, and in a letter dated October 27, 1992, the day before the Board of Elections filed its notice of appeal, King assured Hirschfeld's attorneys that "[t]he name of your client, Abraham J. Hirschfeld, will appear as 'ABRAHAM J. HIRSCHFELD' on the ballot for the General Election to be held on November 3, 1992, for the office of Representative in Congress from the 14th Congressional District."
 
 
 8
 On October 28, 1992, five weeks after the district court rendered its decision, nearly a month after the district court entered judgment and six days before the General Election, the Board of Elections filed a notice of appeal and a notice of motion seeking a stay of the order pending appeal and an expedited appeal.
 
 
 9
 Responding papers were received by us on October 29, 1992, and on October 30, 1992 we heard oral argument on the motions for stay and expedited appeal. After hearing from counsel for the Board of Elections, we denied the motions by summary order informing the parties that a published opinion would follow.
 
 DISCUSSION
 
 10
 * Rule 8(a) of the Federal Rules of Appellate Procedure specifies that an application for a stay of a judgment or order must generally be made first to the district court:
 
 
 11
 Application for a stay of the judgment or order of a district court pending appeal ... must ordinarily be made in the first instance in the district court. A motion for such relief may be made to the court of appeals or to a judge thereof, but the motion shall show that application to the district court for the relief sought is not practicable, or that the district court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the district court for its action.
 
 
 12
 Fed.R.App.P. 8(a). The Board of Elections' motion papers give no explanation why the instant motion for a stay pending appeal was made in the first instance to this Court. No showing of impracticability of bringing such a motion in the district court was offered in briefs or oral argument. The Board of Elections has clearly made no effort to follow proper appellate procedure in their motion for a stay.
 
 
 13
 In addition to disregarding Rule 8, the Board of Elections waited until the Wednesday before the Tuesday of the General Election to file a notice of appeal, after having allowed the judgment below to stand for four weeks. This move was misleading at best. For a month the Board of Elections fostered Hirschfeld's expectation that the judgment would be the final determination of the matter by sending him letters confirming how his name would appear on the ballot, during which time Hirschfeld continued putting time and money into his campaign. At the time of the Board of Elections' motions, voting machines carrying Hirschfeld's name were being delivered or had already been delivered to the respective polling places, and absentee ballots had already been printed and distributed.
 
 
 14
 The Board of Elections' timing of the appeal and motion for a stay suggests that the Board was more interested in a delay that would keep Hirschfeld off the November 3 ballot than in a determination of the correctness of Judge Knapp's decision.[1] We received motion papers on Wednesday, October 28, received responding papers the next day, and heard argument on Friday, October 30. The General Election was two business days later. This is a misuse of the judicial process. Given the Board of Elections' willful disregard of Rule 8, the intervening communications of the parties and the misuse of the judicial process, the instant motions were denied without even examining this Court's standard for the granting of a stay. In the interest of completeness we will show why the Board of Elections was not entitled to a stay even if it had complied with Rule 8.
 
 
 15
 In this Circuit, four factors are considered before staying the actions of a lower court: (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated " 'a substantial possibility, although less than a likelihood, of success' " on appeal, and (4) the public interests that may be affected. Dubose v. Pierce, 761 F.2d 913, 920 (2d Cir.1985) (citing Coleman v. Paccar, Inc., 424 U.S. 1301, 1305, 96 S.Ct. 845, 848, 47 L.Ed.2d 67 (Rehnquist, Circuit Justice, 1976), and quoting Hayes v. City Univ. of New York, 503 F.Supp. 946, 963 (S.D.N.Y.1980), aff'd on other grounds sub nom. Hayes v. Human Resources Admin., 648 F.2d 110 (2d Cir.1981)), vacated on other grounds, 487 U.S. 1229, 108 S.Ct. 2890, 101 L.Ed.2d 924 (1988); see also Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987). Even if the Board of Elections had complied with Rule 8, a consideration of these factors clearly would weigh against the granting of the requested stay.
 
 
 16
 In Nassau Boulevard Shell Serv. Station v. Shell Oil Co., 869 F.2d 23 (2d Cir.1989), we made clear, in the context of a franchisor/franchisee dispute, that we would not generally entertain willfully delayed eleventh hour motions for preliminary relief. "[P]reliminary relief should ordinarily not be granted in franchise disputes where the franchisee, having knowledge for weeks or months of the franchisor's intention to terminate, waits until the very eve of termination to seek such relief." Id. at 23. In Nassau Boulevard Shell the irreparable injury to the moving party which, in the absence of preliminary relief, would result, would be caused in large part by the moving party's own delay in bringing the action. In the case before us, the claimed irreparable injury to the Board of Elections if the stay was not granted was that Hirschfeld's name would appear on the November 3 ballot contrary to the decision of that Board.[2] The reason such alleged injury would be irreparable is the unlikelihood that there would be enough time for the appeal to be heard and decided before the General Election. Consequently, a decision on the motion for a stay would be the final decision of this Court before the underlying issue in dispute became moot. Thus the irreparability is a product of the moving party's own delay. "This is a delaying tactic that is inequitable to the [other party] and to the courts as well." Id. at 24; see also McNeil v. Springfield Park Dist., 656 F.Supp. 1200 (C.D.Ill.1987) (Motion for preliminary injunction seeking to enjoin Springfield Park District elections denied due to inexcusable delay. Original action was filed on January 20, 1987, however plaintiffs did not seek to enjoin the April 7, 1987 elections until March 9, 1987.). The Board of Elections' inexcusable delay in filing the motions here at issue severely undermines the Board's argument that absent a stay irreparable harm would result.
 
 
 17
 Had we issued the stay, the Board of Elections would have removed Hirschfeld's name from the ballots not already distributed and from the voting machines. Hirschfeld's name thus would not have appeared on all ballots, even though the validity of his candidacy almost certainly would have remained unresolved on election day. Given that Hirschfeld had a district court decision in his favor, he obviously would have been substantially injured by having his name removed from the ballot in advance of resolution of the appeal. Likewise, the public's interest in having Hirschfeld as an additional choice on the ballot clearly outweighed any interest the Board of Elections may have had in removing Hirschfeld's name two business days before the General Election.
 
 
 18
 Because we denied the motions for a stay pending appeal and for an expedited appeal on grounds of misuse of the judicial process including willful disregard of Rule 8 of the Federal Rules of Appellate Procedure, we did not have to consider whether this Court's standard for staying the actions of a lower court had been met. Nevertheless, it is clear that we could have denied the stay for failure to meet our standard, even without having considered the probability of success on the merits.
 
 II
 
 19
 We impose double costs and $500 attorney's fees on the Board of Elections by reason of its bad faith conduct in this litigation.
 
 
 20
 According to the "American Rule" in courts in the United States "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Under the courts' inherent power to supervise and control their own proceedings, however, an exception to the American Rule exists which permits courts to impose reasonable attorney's fees against a losing party "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir.1986) (quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)), cert. denied sub nom. County of Suffolk v. Graseck, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). "An inherent power award may be imposed either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons. ' "[B]ad faith" may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.' " Oliveri, 803 F.2d at 1272 (quoting Hall v. Cole, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973)). Under the law of this Circuit, "[a]n action is brought in bad faith when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." Browning Debenture Holders' Comm. v. DASA Corp., 560 F.2d 1078, 1088 (2d Cir.1977). This standard applies to litigation in the court of appeals as well as in the district court. In re Cosmopolitan Aviation Corp., 763 F.2d 507, 517 (2d Cir.) ("[W]here a losing litigant has acted vexatiously or in bad faith, it is within [this Court's] inherent powers to award attorneys' fees."), cert. denied sub nom. Rothman v. New York State Department of Transportation, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985).
 
 
 21
 The Board of Elections filed its motion for a stay pending appeal in complete disregard for Rule 8 of the Federal Rules of Appellate Procedure. The Board of Elections timed the eleventh hour notice of appeal and motion for a stay so that, if we had granted the stay, Hirschfeld's name would have been off the ballot and the timing of the appeal, even if expedited, would not allow enough time to restore his name to the ballot if we affirmed the district court decision. Additionally, the Board of Elections' claim of irreparable injury was meritless because any injury in the absence of the stay would be self-inflicted. For these reasons, the motion for a stay was "entirely without color" and was clearly made for "improper reasons," thus meeting the Browning Debenture Holders' "bad faith" test.
 
 
 22
 The United States Supreme Court has cautioned that "[l]ike other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record." Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). In his responding papers, Hirschfeld put the Board of Elections on clear notice that attorney's fees were being sought: "The motion should be denied, and costs, including attorneys' fees, should be assessed against defendants in light of the failure to comply with Rule 8 of the Federal Rules of Appellate Procedure and in light of the absence of any excuse for the delay in seeking the relief herein." Judge Winter made clear at the start of oral argument that sanctions would be imposed against the Board of Elections. Questioning from the bench was primarily directed at ascertaining who was responsible for bringing the motions, why Rule 8 had been ignored and why the motions were brought a week before the General Election. No satisfactory reason was offered for the violation of Rule 8 or for the delay in filing the motions. Counsel for the Board of Elections, in response to a direct question, conceded that he had been "ordered" by the Board to seek the stay. At the conclusion of oral argument, counsel for the Board of Elections was asked if he had anything else to add, to which he responded in the negative. Thus, the notice and hearing requirement of Roadway Express has been satisfied.
 
 CONCLUSION
 
 23
 We impose double costs and attorney's fees of $500 on defendant-appellant Board of Elections. Given that the Board of Elections' appellate counsel was instructed by the Board to bring these motions, the sanctions should be paid by the client, the Board of Elections.
 
 
 
 *
 Honorable Jane A. Restani of the United States Court of International Trade, sitting by designation
 
 
 [1]
 At oral argument, the Board of Elections offered no explanation for its delay in filing the notice of appeal except that it was examining the merits of the appeal up until the time of filing. The Board of Elections adamantly states in its motion papers and oral argument, however, that precedent exists which is directly on point and which "clearly" establishes the merits of the appeal
 
 
 [2]
 At oral argument, counsel for the Board of Elections stated that the Board of Elections would not itself be irreparably harmed but that "the Board's interests in a proper election" would be harmed