**UNITED STATES of America, Plaintiff,**

v.

**CHICAGO BLOWER SALES OF BUFFALO, INC., and Ronald W. Kruse, Defendants.**

No. 89–CV–883C.

United States District Court, W.D. New York.

Dec. 21, 1993.

United States Dept. of Justice (Andrew D. Plepler, Trial Attorney, Tax Div. of counsel), Washington, DC, for plaintiff U.S.

Gary Wojtan, Cheektowaga, NY, for respondent Jeffrey A. Lazroe.

CURTIN, District Judge.

Pending is the application of the United States against Jeffrey Lazroe, Esq., for attorney's fees pursuant to 28 U.S.C. § 1927. The government claims that his conduct in this case unreasonably and vexatiously multiplied the proceedings, and therefore, an award of attorney's fees under 28 U.S.C. § 1927 is justified.

Mr. Lazroe appeared through Gary J. Wojtan, Esq., in opposition to the government's motion. Before the hearing Mr. Wojtan filed a brief in support of Mr. Lazroe's position (Item 36) but after the hearing notified the court that he would not file a further statement after the government filed its proposed findings of fact (Item 48).

A hearing on the application was held on April 28, 1993 (Item 45). The government has filed a memorandum of law, several letters, and proposed findings of fact (Item 46) in support of its position. The following constitutes the court's findings of fact and conclusions of law.

The present application arose out of the suit by the government against Chicago Blower Sales of Buffalo, Inc. ("Chicago") and Ronald W. Kruse for corporate income taxes. Chicago did not file an answer, but Kruse did. The government made a motion for a default against Chicago, which was granted on December 14, 1992. The court entered judgment against the corporate defendant in the sum of $47,244.27.

The government's action then moved to the assertion of a claim against Ronald Kruse, the company's 100–percent shareholder. Trial was held on December 15, 1992. One theory for recovery against Kruse was based upon his failure to honor a levy to compel him to satisfy a promissory note payable to Chicago. Mr. Kruse defended on the ground that there was no money owed to the company by him because it had been offset against wages owed to him. However, Mr. Lazroe never provided documentation in support of this defense.

A second theory was that dividends paid by Chicago to Kruse after tax liabilities of Chicago had accrued were fraudulent conveyances, and that pursuant to New York Debtor and Creditor Law § 278, Kruse was liable to the United States for damages in the amount of the dividends up to the liability of Chicago. Only a general denial was framed in support of this allegation.

Before trial, a pretrial conference was held on the Kruse matter on December 8, 1992. At that time, the United States asserted that the burden of proof for the defenses propounded was on defendant and cited case law in support of that proposition. Mr. Lazroe did not challenge the United States' position, but during the discussion of witness testimony he clearly implied that Mr. Kruse would testify. A pretrial brief was filed by the United States on December 10, 1992, restating its position with respect to the burden of proof and setting forth additional legal arguments.

On the day of trial, December 15, 1992, Andrew Plepler, Esq., Department of Justice attorney, traveled from Washington, D.C. Representations had been made by Mr. Lazroe that his client would testify and offer a defense. However, Mr. Lazroe appeared, but his client did not. When he was asked why his client was not there, Mr. Lazroe responded with a suggestion that the United States should have subpoenaed Mr. Kruse. Previously, Mr. Lazroe had never informed the attorney for the government that Mr. Kruse would not be present. In addition, in spite of the fact that the United States had provided the court with case law that the burden of proof was on the defendant, Mr. Lazroe never responded beyond representing that his client would testify.

After a brief hearing, the court rejected the Lazroe argument and entered judgment against Ronald Kruse. The court stated that attorney's fees would be awarded upon the submission of an accounting by the United States. On December 18, 1992, judgment was entered against Ronald Kruse in the sum of $81,795.90. The United States submitted an accounting reflecting attorney's fees in the sum of $9,235.18, and the court

gave Mr. Lazroe until February 12, 1993, to object. No objection has been filed.

Mr. Lazroe's conduct in the action against Kruse lends strong support to the government's application, and Lazroe's subsequent conduct in further proceedings was obstructive and dishonest.

After the trial on December 15, the court first gave consideration to Lazroe's explanation that the decision not to appear at trial was made by Mr. Kruse. At that time, the court decided that attorney's fees should be awarded against Mr. Kruse only. When demand for payment of the judgment was not met, a deposition of Mr. Kruse was scheduled for January 1993. On January 26, 1993, Mr. Lazroe sent a letter in response to the notice of deposition stating that he was unable to contact his client to arrange for his appearance at the deposition. He affirmed his inability to contact Mr. Kruse in subsequent telephone conversations with Mr. Plepler on January 29, 1993, and February 4, 1993.

After the government filed an application for the imposition of attorney's fees against Jeffrey Lazroe (Item 32) the court scheduled a hearing for February 24, 1993. On the day before the hearing, Mr. Lazroe spoke with Mr. Plepler by telephone to see if the matter could be settled or withdrawn. When Plepler refused Lazroe's request, Lazroe did not inform Plepler either that he would seek an adjournment or that he planned to retain counsel. At the hearing on February 24, 1993, Mr. Lazroe appeared, represented by attorney Gary J. Wojtan, Esq. At Mr. Wojtan's request, the court adjourned the hearing to give Wojtan an opportunity to prepare and to file a memorandum.

Subsequently, the United States subpoenaed Mr. Kruse for a deposition, to occur on March 8, 1993, and notified Mr. Lazroe of the scheduled date for the deposition. At that time, Mr. Lazroe had not moved for leave to withdraw from the case, nor had he notified Mr. Kruse that he no longer represented him, nor had he informed the United States of that fact. Mr. Kruse appeared for the scheduled deposition, but Mr. Lazroe did not. Because Mr. Lazroe failed to appear on behalf of Kruse, the deposition was adjourned to give Kruse an opportunity to consult with

counsel. Shortly thereafter, the court granted Lazroe's motion to withdraw as attorney for Kruse (Item 38).

Mr. Lazroe's suggestion that he did not appear at the March 8, 1993, deposition of Mr. Kruse because he no longer represented him is baseless. Before that time, he had not made an application to be relieved as counsel for Mr. Kruse; he had never notified the court or opposing counsel of his determination not to represent him and had never consulted the applicable law to determine what his obligation was to his client.

A hearing on the government's application for attorney's fees against Mr. Lazroe was held on April 29, 1993 (Item 45). At the hearing, evidence was produced by the government proving that Mr. Lazroe appeared in state court with Mr. Kruse on January 27, 1993. During the hearing, Mr. Lazroe acknowledged that he met with Mr. Kruse on January 27, 1993. Therefore, his representation to the court and opposing counsel in late January and early February that he could not locate Mr. Kruse in the latter part of January was false.

Mr. Lazroe's failure to notify the government attorney in December that he did not intend to offer any proof in opposition to the government's case forced Mr. Plepler to make an unnecessary trip. His representation to Plepler in late January that he could not locate his client was false. His failure to tell Plepler that he intended to retain counsel before the February hearing and his failure to appear for his client Kruse at the March deposition placed additional unnecessary burdens on the government lawyer and disrupted the court's calendar.

Mr. Lazroe's conduct from the beginning of this litigation has been obstructive, and has required the government to take many steps which it should not have been obliged to take. For example, he argued that Chicago owed money for wages to Mr. Kruse during a period in which Kruse listed himself as unemployed on his income tax return. Before trial on December 15, Mr. Lazroe was well aware that he had no defense to offer— that he had no documents or testimony to support his defense.

Mr. Lazroe's testimony, at the hearing in April, that Kruse's decision not to appear at trial was a surprise to him was not credible. His suggestion that the United States should have subpoenaed Kruse for trial leaves the inference that he knew beforehand that Kruse would not appear. In the face of settled law regarding the defendant's obligation to carry the burden of proof, he represented that his client would testify. Either he knew or should have known at that time that he had no evidence to rebut the government's case.

Mr. Lazroe's failure to notify Mr. Plepler on the eve of the February hearing that he intended to retain counsel and seek an adjournment was inexcusable. He had already been reprimanded by the court for falsely representing that his client would appear at trial. To repeat this conduct and force the government attorney to make a fruitless journey should not go unnoticed.

These instances of misconduct reflect a pattern of attempts to frustrate the United States' efforts to collect the subject liabilities. Mr. Lazroe's obstructive behavior has placed unnecessary burdens not only upon the Department of Justice but also upon the court itself.

The government has filed two certificates setting forth expenses incurred because of Lazroe's conduct (Items 30 and 37). The suggested award in the sum of $10,439.50 is most reasonable.

■ The purposes of 28 U.S.C. § 1927 will be furthered by an award of attorney's fees against Jeffrey Lazroe personally. Such a sanction is, in addition, justifiable pursuant to the court's inherent power. *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344–1345 (2d Cir.1991).

An award is appropriate under 28 U.S.C. § 1927 because Mr. Lazroe unreasonably and vexatiously multiplied the proceedings in this case. The Second Circuit has held that an award under § 1927 is proper when " 'the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.' " *United States v. International Brotherhood of Teamsters*, 948

F.2d at 1345 (*quoting Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)). In this case, not only was the defense as to every claim without merit, but Mr. Lazroe failed to produce his client Kruse at trial after representing that Kruse would appear to testify and offer a defense. He falsely represented to the court that Kruse was not available for depositions. Further, he failed to notify the court and counsel that he intended to retain counsel for the hearing on attorney's fees when he knew that he would be taking such action. This resulted in the government attorney making a second needless trip to the court for the purpose of the hearing.

■ An award is equally well justified pursuant to the court's inherent power, which "stems from the very nature of courts and their need to be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *United States v. International Brotherhood of Teamsters*, 948 F.2d at 1345 (*quoting Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)). Mr. Lazroe's actions provide the clear evidence of bad faith required for imposition of sanctions under the court's inherent power. *Id.* (*citing Oliveri v. Thompson*, 803 F.2d at 1272); *see also, Hirschfeld v. Board of Elections in the City of New York*, 984 F.2d 35, 40 (2d Cir. 1993).

The government seeks an award of attorney's fees in the sum of $10,439.57 and has submitted affidavits in support of that application. The affidavits are in order, and judgment shall be entered by the Clerk against Jeffrey Lazroe in the sum of $10,439.50, with interest.

So ordered.