**Abraham HIRSCHFELD,
et ano., Plaintiffs,**

v.

**George SPANAKOS, et al., Defendants.**

**No. 94 Civ. 1588 (LAK).**

United States District Court,
S.D. New York.

Dec. 28, 1995.

---

4. *Felder v. Casey*, 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123 (1988).

Frank Graziadei, New York City, for Plaintiffs.

Paul Marks, Sara Edelman, Paul A. Crotty, Corporation Counsel of the City of New York, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case has been the subject of previous published opinions reported at 871 F.Supp. 190 (S.D.N.Y.1994) and 1995 WL 747759, —— F.Supp. —— (S.D.N.Y. Dec. 18, 1995), respectively, familiarity with which is assumed. This is the Court's decision following a bench trial of the few issues that were not disposed of by the previous motion practice.

█ The issue that remains for resolution is whether the City of New York, the Board of Elections, and the individual defendants in their official capacities as members of the Board of Elections, violated plaintiffs' constitutional rights, and thus Section 1983, by filing an unsuccessful motion for a stay of Judge Knapp's injunction in the Court of Appeals and, if so, what if any damages plaintiffs sustained.

As the Court's previous decisions make clear, the question whether there was a violation of plaintiffs' constitutional rights depends upon whether the motion for a stay was objectively baseless in the sense that no reasonable litigant could realistically have expected success on the merits and, if so, whether it subjectively was intended to interfere directly with the exercise of constitutionally protected rights by the plaintiffs "through the 'use [of] the governmental *process*—as opposed to the *outcome* of that process ...'." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 61, 113 S.Ct. 1920, 1928, 123 L.Ed.2d 611 (1993) (quoting *Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991) (emphasis in original)).

For reasons alluded to in this Court's decision on defendants' motion for summary judgment, the Court finds that the stay motion was objectively baseless. The defendants ignored FED.R.APP.P. 8(a), which alone made denial of the motion significantly more than merely probable. They delayed until the eleventh hour, which substantially under-

cut their claim that the absence of a stay would subject them to immediate and irreparable injury. *Hirschfeld v. Spanakos*, 909 F.Supp. 174, 178. These factors, particularly when coupled with the appearance of bad faith from the timing of the motion, leads this Court to find that no reasonable litigant who was informed accurately of the applicable law realistically could have expected success on the merits.

The question whether there was a constitutional violation therefore turns upon the Board's subjective intent in filing the stay motion, which is the subject of the second branch of the *Professional Real Estate Investors* test.[1] The possibilities range along a spectrum.

At one end is the possibility that the Board, although objectively chargeable with knowledge that it was unlikely to obtain a stay, was not subjectively aware that the odds were so heavily against it and, in fact, acted without any purpose to interfere with Hirschfeld's campaign except to the extent that the Second Circuit might hold that the Board was entitled to a stay that would have kept him off the ballot. In that event, it would have acted in a *bona fide* if ill-advised effort to enforce a provision of the New York Election Law that previously had been upheld by the Second Circuit. *See Hirschfeld*, 909 F.Supp. 174, 178.

The opposite end of the spectrum is implied by an argument previously made in this case by Hirschfeld. Hirschfeld has suggested that the effect of the Board's appeal and stay motion, the latter made as it was days before the election, was to create uncertainty as to whether Hirschfeld would be on the ballot and thus to discourage prospective voters, contributors and media coverage and generally undermine his prospects for success. If the Board subjectively understood that the stay motion was doomed, it is difficult to imagine any reason for the motion other than to disrupt the campaign.

In both of these two cases, the Board would have "interfered" with the exercise of Hirschfeld's constitutional rights in the sense that it would have taken action that made it more difficult for Hirschfeld to be elected to Congress. In the first case, however, the intention would have been to keep him off the ballot as the outcome of the judicial process. In the second, it would have been to make his election more difficult "through the use [of] the governmental *process*—as opposed to the *outcome* of that process...." *Columbia*, 499 U.S. at 380, 111 S.Ct. at 1354 (emphasis in original). There are many intermediate points at which both such intentions would have been present in varying proportions.

■ The Court is aware that the Second Circuit, in the prior action, imposed sanctions on the Board on the ground, among others, that its stay motion was made in bad faith. *Hirschfeld v. Board of Elections in the City of New York*, 984 F.2d 35 (2d Cir.1993). That determination, however, does not have preclusive effect in this subsequent action for three reasons. First, the process by which appellate courts impose sanctions suits the appellate courts' need to police the behavior of parties before them. But it typically is a summary process in which no testimony is taken and no cross-examination permitted. It does not afford litigants the full opportunity to litigate factual issues that is a prerequisite to giving the determination of factual

---

1. The Court is aware that this is a Section 1983 and not an antitrust case. But this difference does not warrant a different analysis. In each case, the defendant has a constitutionally protected interest that cannot be subordinated entirely to the vindication of the plaintiff's also weighty concerns. One might seek an accommodation in a purely objective test, but such a course would be unduly costly, especially in these circumstances. A purely objective test would run the risk that a defendant's actions, though a sincere and properly motivated attempt to secure judicial relief as is the right of every citizen, nevertheless would result in liability, a result at odds with deeply held constitutional values. *Cf., e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 283, 84 S.Ct. 710, 727, 11 L.Ed.2d 686 (1964). In each case, therefore, we must look not only to the question whether the defendant's resort to the courts was objectively colorable, but also to whether the defendant was abusing the right to seek the courts' aid. Making the issue turn on whether the defendant was seeking to achieve the defendant's aim as the outcome of the judicial process rather than through the mere operation of the process is equally appropriate in each situation.

issues preclusive effect in subsequent litigation. *See Hirschfeld,* 909 F.Supp. at 178 n. 2 (citing cases). Indeed, this case well illustrates the dangers of according preclusive effect to such determinations. Second, as previously discussed, the Court of Appeals' bad faith finding was not necessary to its ruling in the sense required before it may be given preclusive effect. *Id.* Third, the issue before the Second Circuit, although certainly similar, was not necessarily the same as that now presented here. The issue here is whether the Board acted for the subjective purpose of interfering with Hirschfeld's campaign by the effect of making the stay motion, as distinct from the effect that would have flowed from a decision by the Second Circuit to grant the motion. The Court of Appeals' conclusion that the motion was an abuse and made in bad faith in the sense that it was vexatious, harassing, or made for another improper purpose, 984 F.2d at 40, does not necessarily reflect a finding that the Board acted with the quite specific subjective intent required for liability here.[2]

The facts critical to disposition of this issue are these: Judge Knapp issued a preliminary injunction requiring the Board to place Hirschfeld on the ballot on September 30, 1992. The Board resolved to appeal from that decision at a meeting held on October 6, 1992 at which no representative of the Corporation Counsel was present.[3] The matter then passed to the Corporation Counsel's office.

The Board held another meeting on October 27, 1992 at which an Assistant Corporation Counsel appeared to report on the Hirschfeld appeal, which of course had not yet been taken. He began by advising the Board that the case would not be heard before election day and that Hirschfeld's name would appear on the ballot. He advised that the appeal was not frivolous but that the Board might lose. He indicated that the State Board of Elections would submit an *amicus* brief in support of the City Board. Nevertheless, members of the Board expressed annoyance at what they perceived to be foot-dragging by the Corporation Counsel. A motion to discharge the Corporation Counsel as the Board's attorney on the ground that he "was not doing [his] job and not working in the Board's best interest" was made and seconded, though later withdrawn. (DX C) A motion to have the Corporation Counsel "proceed immediately on the appeal" then carried unanimously. (*Id.*) The appeal and the stay motion were filed on the following day. The record thus is plain, and the Court finds, that the Board of Elections was not responsible for any undue delay in filing the appeal and the stay motion. On the contrary, it protested about the delay in pursuing the appeal to the Corporation Counsel's office.

The evidence is unclear as to whether the Board ever considered whether to seek a stay pending appeal, as distinct from pursuing the appeal as promptly as possible.[4] Perhaps it did, as the Court is inclined to

**2.** The Court of Appeals thought that the Board timed the motion so that a stay would have kept Hirschfeld off the ballot, but insufficient time would have remained for disposition of the appeal on the merits. 984 F.2d at 40. Such an intention would not suffice to establish liability under the second prong of *Professional Real Estate Investors* because the interference with Hirschfeld's campaign would have been the result of a judicial determination to issue a stay, not merely a result of the making of the motion. The point, however, is academic in view of this Court's finding that the Board did not have such an intent.

**3.** The parties stipulated at trial that the Board advised Hirschfeld's counsel of the decision to appeal on the same date.

**4.** The Court of Appeals' opinion in the prior litigation demonstrates that it was particularly

offended by the timing of the stay motion, responsibility for which it laid at the doorstep of the Board of Elections on the basis of a statement during oral argument by counsel to the Board that he had been "ordered" by the Board to seek the stay. 984 F.2d at 40–41. No direct evidence of any such order was offered at trial. While the Court is inclined to accept that the Board on October 27, 1992 directed that counsel seek a stay, or at least acquiesced in that course, it finds also for the reasons discussed in the text that the Board neither was responsible for the delay in the making of the motion nor aware that it had no reasonable prospect of success. Certainly it did not, as the Court of Appeals believed, "time[ ] the eleventh hour ... motion ... so that, if [it] had granted the stay, Hirschfeld's name would have been off the ballot and the timing of the appeal, even if expedited, would not allow enough time to restore the name to the ballot if [it] affirmed the district court decision." *Id.* at

believe, or perhaps the Corporation Counsel's office filed the motion for a stay without specific instructions from the Board in response to the displeasure with its representation so clearly manifested at the Board's October 27 meeting. In either case, however, the Court finds that the Board was not aware that a stay motion would stand no realistic prospect of success. The Court further finds that there is no persuasive proof that the Board intended any of its actions, in whole or in part, to interfere with the campaign except to the extent of the interference that would have occurred as the result of a judicial decision to grant the motion.[5] In light of *Professional Real Estate Investors, Omni Outdoor* and, indeed, the entire history of the sham exception to the *Noerr* doctrine, the plaintiffs may not recover in these circumstances. They have failed to establish that the defendants sought to interfere with Hirschfeld's campaign through the process rather than the outcome of litigation.

■ As this case presents what appears to be a question of first impression, it is appropriate to take account of the possibility that a reviewing court may take a different view of the liability issue and to proceed to the question of damages so that there will be no need for a remand in any event.

Plaintiffs claim that Hirschfeld would have won the election[6] but for the Board's actions and that they were damaged in other ways.

The Court appreciates the frustration and irritation they feel. Nonetheless, the basic problem established by plaintiffs' evidence was one common to virtually all independent campaigns, particularly independent Congressional and other local campaigns in this major media market in presidential election years. The ballot access laws of New York present formidable obstacles to independent candidacies, not least of them the uncertainty that often exists as to whether independent candidates will secure ballot positions. Even if successful in securing places on the ballot, such candidates have great difficulty in competing successfully against the torrent of political and other news for media attention. They have great difficulty too in persuading prospective voters, contributors and others that they are serious contenders. The most plaintiffs could have hoped to establish in this case is that the stay motion made a virtually insurmountable task marginally more difficult. But with due respect to their sincerely held feelings, it suffices to say that their claims of injury and of compensable damages have not been established by a preponderance of the evidence. The Court finds that the defendants' actions, insofar as they remain at issue in this action, caused no compensable injury to plaintiffs and that there is no basis whatever for any compensatory recovery.[7] Accordingly, even if there were liability here, the Court would fix damages at six cents, a nominal figure appropri-

40. In consequence, the Court of Appeals' conclusion that it was the Board, rather than its counsel, that was responsible for the aspects of the motion the Court found most offensive (and sanctionable) was made without benefit of the evidence now of record, evidence that is inconsistent with the Board's liability.

5. The October 27 Board minutes state that one of the commissioners "asked what would happen if Mr. Hirschfeld wins the election." (DX C) The Court finds this to have been a hyperbolic expression of concern about the effect on the major party candidates of Hirschfeld's presence on the ballot while the issue of his right to ballot access was in dispute. Independent candidates may have a decisive effect on elections closely contested by major party candidates. The commissioner who made the statement appears to have been expressing a desire to have Hirschfeld's right to be on the ballot decided, one way or another, before the election. The Court finds that the statement was not a reflection of a serious view that Hirschfeld might have won.

6. The Court takes judicial notice of the fact that the candidates in the election were Carolyn B. Maloney (Democratic and Liberal Party nominee), Bill Green (Republican and Independent Neighbors nominee) and Hirschfeld (Better East Side line). Hirschfeld polled 2,970 votes of the 238,720 cast.

7. While not resting exclusively on these points, the Court finds that the stay motion diverted plaintiffs' campaign staff from electoral to litigation activities for no more than six to eight person-hours, that all campaign expenses incurred during the relevant period (other than attorneys' fees incurred in resisting the stay motion, which have been dealt with in a prior opinion) would have been incurred absent the stay motion, and that plaintiffs' claims that they were ignored by the news media, candidate fora and the like because of the stay motion, as opposed to the marginal nature of the candidacy, are not persuasive.

ate under *Carey v. Piphus*, 435 U.S. 247, 266–67, 98 S.Ct. 1042, 1053–54, 55 L.Ed.2d 252 (1978), in a case in which the defendants are guilty of a constitutional violation but no compensatory damages are established. *See also Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992); *Memphis Community School District v. Stachura*, 477 U.S. 299, 308–10 & n. 11, 106 S.Ct. 2537, 2543–45 & n. 11, 91 L.Ed.2d 249 (1986). Inasmuch as the only claims remaining are against the City, a City board, and City officials in their official capacities, plaintiffs could not recover punitive damages even if the defendants were liable. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).[8] Hence, in the event that liability had been established, which it was not, the Court would enter judgment in plaintiffs' favor in the amount of six cents.

Accordingly, this action is dismissed. The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.

---

**8.** Plaintiffs cited *Patterson v. Coughlin*, 722 F.Supp. 9 (W.D.N.Y.1989), *aff'd in part, vacated in part*, 905 F.2d 564 (2d Cir.1990), for the proposition that the Court, in its discretion, may award punitive damages. *Patterson*, however, stands only for the proposition that punitive damages may be awarded in appropriate Section 1983 cases. It in no way suggests, contrary to the Supreme Court's decision in *City of Newport*, that punitive damages are available against municipalities and municipal officials sued in their official capacities.