**Jim HODGES, et al., Plaintiffs,**

v.

**Donna SHALALA, et al., Defendants.**

No. 3:00–2048–17.

United States District Court,
D. South Carolina,
Beaufort Division.

Jan. 4, 2001.

Marcus Manos, Wilburn Brewer, Jr., Susan Batten Lipscomb, Nexsen, Pruet, Jacobs & Pollard, LLP, Columbia, SC, for plaintiffs.

Deborah B. Barbier & Robert F. Daley, Jr., Office of the United States Attorney, Columbia, SC, Robert E. Keith, United States Department of Health and Human Services, Washington, DC., for defendants.

## ORDER

JULIEN ABELE COOK, Jr., District Judge.

Upon the motion of the Plaintiffs, Jim Hodges, et al. (collectively "the Plaintiffs"),

the Court entered an Order on December 11, 2000 in which it temporarily restrained the Defendants, Donna Shalala, et al. (collectively "United States"), from taking any action that would penalize the State of South Carolina (hereinafter "the State") for its failure to comply with Title IV, Part D of the Social Security Act, 42 U.S.C. §§ 651–669 (1975), or foreclose its ability to elect the alternative penalties that are prescribed thereunder.[1] For the reasons that have been set forth below, the Court denies the Plaintiffs' request for an injunction pending appeal.

This motion for relief has been submitted by the Plaintiffs pursuant to Federal Rule of Civil Procedure 62(c) in an effort to prevent the United States from initiating any further administrative action concerning the issues in this case until the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has an opportunity to review their challenge to the dispositive Order that issued on October 24, 2000 and the Judgment that followed.[2] According to Rule 62(c), the Court has the discretion to grant injunctive relief, upon such terms as it deems to be appropriate, during the pendency of any appeal of a judgment that denies or dissolves an injunction.[3] In this case, the Judgment denied one injunction and dissolved another. Thus, the protections of Rule 62(c) are applicable.

 As with any other motion, the burden is upon the movants in this cause

---

1. This Order was specifically designated as a form of temporary relief to the Plaintiffs because the United States had not had an opportunity to respond to the motion. The parties have now fully briefed the issue.

2. The Court entered a preliminary injunction in favor of the Plaintiffs on July 27, 2000. However, the Order of October 24, 2000, which is the subject of their request for appellate review by the Fourth Circuit, (1) denied their request for a second injunction and (2) granted the United States' motion for the entry of a summary judgment on all claims. See 121 F.Supp.2d 854 (D.S.C.2000). Subsequently, a Judgment was entered in favor of the federal government.

3. "This [R]ule has been narrowly interpreted to allow district courts to grant only such relief as may be necessary to preserve the status quo pending an appeal where the consent of the court of appeals has not been obtained," *Vasile v. Dean Witter Reynolds, Inc.*, 205 F.3d 1327 (Table), 2000 WL 236473, *2 (2d Cir.2000) (citing 12 James Wm. Moore et al., Moore's Federal Practice § 62.06[1] (3d ed.1999); other citations omitted); see *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 578 (5th Cir.1996) ("[T]he district court's power to alter an injunction pending appeal is limited to 'maintaining the status quo.' ").

792

to support their request for the desired relief. In determining whether to grant relief under Rule 62(c), the federal courts generally look to the familiar standards that are applicable to petitions for other injunctive relief. *See Tribal Village of Akutan v. Hodel,* 859 F.2d 662, 663 (9th Cir.1988) (citing *Lopez v. Heckler,* 713 F.2d 1432, 1435 (9th Cir.1983)). According to the Fourth Circuit, the Court must consider, among other things, (1) the likelihood of irreparable harm to the Plaintiffs if the injunction is denied, (2) the likelihood of harm to the United States if the requested relief is granted, and (3) the public interest. *See Rum Creek Coal Sales, Inc. v. Caperton,* 926 F.2d 353, 359 (4th Cir.1991); *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F.2d 189 (4th Cir. 1977). "The irreparable harm to the [P]laintiff[s] and the harm to the [D]efendant[s] are the two most important factors." *Rum Creek Coal Sales,* 926 F.2d at 359

Moreover, the substantiality of the contested legal questions must also be examined by the Court. Although courts have recently phrased this inquiry in varying terms,[4] the Fourth Circuit has determined that Rule 62 requires "a party seeking a stay [to] show ... that he will likely prevail on the merits of the appeal...." *Long v. Robinson,* 432 F.2d 977, 979 (4th Cir. 1970) (affirming denial of stay where,

among other things, district court applied reserved reading of precedent, instead of fashioning new interpretation of the law).

 In carefully applying the factors to this case, the Court is persuaded that the Plaintiffs have not met their burden of proof. As discussed in the Order of October 24, if an injunction does not issue, the State will likely lose millions of dollars in federal funding. "However, 'mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.'" *Long,* 432 F.2d at 980 (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 259 F.2d 921, 925 (D.C.Cir. 1958)). Moreover, the degree of the loss is controlled by the Plaintiffs. As such, they are free to elect the alternative penalty and, thus, minimize their losses. In such case, the State would be able to retain more than ninety percent of its general public assistance funding. In addition, this election of the alternative penalty by the Plaintiffs will not undermine their ability to challenge the constitutionality of the Title IV–D conditions.

Furthermore, the record in this cause clearly suggests that the United States will suffer a hardship if it is prevented from undertaking the requisite administrative procedures against the State, as prescribed by law. The Court has deter-

**4.** Some courts have joined the Fourth Circuit in asking whether movants, such as the Plaintiffs, are likely to succeed on the merits of their appeals. *See, e.g., Tribal Village of Akutan,* 859 F.2d at 663; *Kawecki Berylco Indus. v. Fansteel, Inc.,* 517 F.Supp. 539, 540 (E.D.Pa.1981); *Evans v. Buchanan,* 435 F.Supp. 832, 843 (D.Del.1977) ("According to the test accepted by virtually all courts, including this one, one seeking a stay pending appeal ... must make 'a strong showing that he is likely to succeed on the merits of the appeal.'"). Other courts, in looking to the companion provision of Federal Rule of Appellate Procedure 8, consider "whether the movant has demonstrated 'a substantial possibility, although less than a likelihood, of success' on appeal." *LaRouche v. Kezer,* 20 F.3d 68, 72 (2d Cir.1994) (citing *Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir.

1993)). One court has observed that, in order to issue an injunction in the absence of a finding that the movant is likely to succeed on the merits, (1) the balance of the equities must heavily tilt in the movant's favor and (2) there must be an issue that has "patent substantial merit." *Ruiz v. Estelle,* 666 F.2d 854, 856–57 (5th Cir.1982) (clarifying earlier statement in *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir.1981) ("[T]he movant need not always show a 'probability of success' on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.")). For the reasons that have been set forth in the text of this Order, the Court concludes that the Plaintiffs would not be able to prevail under any of the articulated standards of substantiality.

mined that, under well established law, the disputed Title IV–D programs are not entitled to approval, and, as such, the State is not entitled to receive certain funds. For each day that an injunction restrains the United States from pursuing its administrative responsibilities, (1) the federal government will be prevented from disapproving the noncompliant programs in the State, and (2) the State, in turn, would continue to receive federal funding at an enhanced level.

In its motion, the State argues that the United States, through the Congress, can recoup any loss of federal monies by simply reducing any future federal block grants to the State. However, there is no identifiable, legal basis upon which Congress could retroactively penalize the State. Under the statute, penalties are only prospective and begin only when the United States specifically disapproves a state's proposed plan. As long as the Court restrains the federal government from disapproving the plan at issue, the State will be free from penalty. Although Congress retains control of its spending power, its hypothesized ability to later reduce the State's funding without warning or statutory basis is too amorphous to receive the authority of this Court. Thus, the entry of an injunction in this case would effectively give the State a grace period during which it would continue to collect undeserved monies while exhausting its legal arguments and remedies. In the meantime, this dispute would continue at the expense of the United States and, more importantly, the citizenry that contributes to, and relies upon, the limited pool of federal funds. Accordingly, the Court determines that the Plaintiffs have failed to satisfy their burden of demonstrating that the balance of harms is in their favor.

Moreover, the Court is not persuaded that legal precedent provides South Carolina with a likelihood of success on the merits. Although the questions that have been raised in this case have constitutional and statutory importance, the movant has asked this federal court to substantially depart from well established case law. In its argument, South Carolina maintains that the State was coerced into accepting the Title IV–D conditions. However, as the Court concluded in its Order of October 24, such conditions were obvious and material elements of the financial relationship between the State and the United States as it pertains to public assistance. In order to reach the conclusion that such open and important obligations were the result of coercion, a court would be required to find that the financial muscle of the federal government is so powerful as to be coercive, even against a state. The potential impact of such a holding upon other federal actions, such as when the United States contracts with companies or imposes conditions upon individuals in connection with their acceptance of federal benefits, would be enormous. To counter this concern, South Carolina maintains that the federal government knowingly cultivated the State's dependency upon federal funding. However, the Court is unaware of any case law that would support a cause of action which would vacate the responsibilities of a person—much less a state—to the federal government because of such an evolving dependency. Although the contentions of South Carolina may have some moral weight, a federal court would be required to take a long step into previously uncharted territory in order to support such a holding. Under these circumstances, the Court declines to find a significant probability—much less a likelihood—that South Carolina will succeed in its appeal. Accordingly, the movant has not met its burden to present a sufficiently substantial legal question.[5]

Finally, the Court has previously recognized that a strong public interest exists in the distribution of the monies at issue to

**5.** This conclusion is especially appropriate in light of the determination by the Court that

the balance of harms does not weigh markedly in favor of South Carolina.

the poorest residents of South Carolina, in such a manner that would satisfy these persons' daily needs while the parties litigate the appeal of this case. However, the United States has observed that the bulk of federal public assistance funding will not be lost if the State elects the alternative penalty. Moreover, there is also a strong competing public interest in protecting the national economic base against an unwarranted invasion in order to support the general welfare of the country's citizenry. In this case, the nation's taxpayers have an interest in spending money only on federally approved programs. Hence, South Carolina has not met its burden to show that the public interest weighs in its favor.

For the reasons that have been set forth above, the Court concludes that the Plaintiffs are not entitled to the entry of an injunction during the pendency of the appeal of this case. Their motion for injunctive relief pursuant to Rule 62 must be, and is, denied. This Order supercedes all prior directives from the Court which pertain to this motion.

IT IS SO ORDERED.