JON 0. NEWMAN,
Circuit Judge, dissenting.
The National Organization for Marriage (“NOM”), an advocacy organization, seeks a ruling from a federal district court that New York’s definition of a “political committee,” see N.Y. Elec. Law § 14-100.1, violates the First Amendment. NOM seeks such a ruling to avoid compliance with various requirements imposed on a “political committee,” such as registration, see id. § 14-118, maintenance of records, see id. §§ 14-102, -108, -122, and filing reports of contributions and expenditures, see id. §§ 14-102, -104. Because no New York official has expressed the view that NOM is a “political committee” and the New York State Board of Elections (“Board of Elections”) has advised us of its willingness to respond to an inquiry from NOM as to whether the Board would classify NOM as a “political committee,” NOM’s lawsuit is not now ripe for adjudication, as the District Court correctly ruled, see National Organization for Marriage, Inc. v. Walsh, No. 10-cv-751A, 2010 WL 4174664, at *4 (W.D.N.Y. Oct. 25, 2010). From the majority’s contrary ruling, I respectfully dissent.
As the majority recognizes, NOM is obliged to assert “an invasion of a legally protected interest which is ... actual or imminent, not conjectural or hypothetical.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks and citations omitted). I recognize that in some circumstances a pre-enforcement challenge may be brought to adjudicate the validity of statutes alleged to violate the First Amendment. See, e.g., Vermont Right to Life Committee v. Sorrell, 221 F.3d 376 (2d Cir.2000). I also recognize that a plaintiff intending to engage in conduct arguably proscribed by statute need not subject itself to criminal prosecution or the imposition of civil penalties to test its First Amendment claim. Finally, I also recognize that in some circumstances, a plaintiffs own apprehension that it will be subject to allegedly unconstitutional state law requirements can suffice to permit a pre-enforcement challenge. But such apprehension cannot suffice in circumstances, like those in this case, where the relevant regulatory body (a) has given no indication that the challenged regulations apply to the plaintiff, (b) stands ready to respond to an inquiry as to whether the challenged regulations apply to the plaintiff, and (c) is required to afford the plaintiff notice in the event the body intends to depart from advice that the regulations do not apply. In such circumstances, the plaintiffs fear of adverse consequences cannot be said to be “well-founded,” id. at 382.
We recently upheld an as-applied challenge to state regulations alleged to impair First Amendment rights where the relevant regulatory body declined to give pre-enforcement advice that would have clarified the meaning of the regulations. See Hayes v. New York State Attorney Grievance Committee, 672 F.3d 158, 170 (2d Cir.2012). In the pending case, however, the Board of Elections, responding to our inquiry at oral argument, has commendably advised that it “would respond to a letter questioning whether an entity’s activities would classify it as a ‘political committee’ pursuant to New York Elections Law § 14-100(1).” Letter from Craig R. Bucki, counsel to Defendants-Appellees, to Catherine O’Hagan Wolfe, Clerk of Court, at 1 (Aug. 30, 2011). The Board noted that it has issued formal opinions in reply *694 to inquiries, see, e.g., 1975 N.Y. State Bd. of Elections Opinion # 13, 1976 N.Y. State Bd. of Elections Opinion # 5. The Board also noted that it responds to “telephone requests for informal advice as to whether an entity constitutes a political committee.” Bucki letter, at 1.
In Vermont Right to Life Committee, State officials sought to preclude a pre-enforcement challenge on the ground that they had no intention of enforcing challenged regulations against the plaintiff. 221 F.3d at 383. We properly rejected the State’s claim that the plaintiffs fear of suit was not well-founded because “there is nothing to prevent the State from changing its mind.” Id. The majority contends that the pending case “is no different from Vermont Right to Life Committee, [Op. P. 690] but that assertion overlooks a crucial difference between that case and ours. Not only does the Board of Elections stand ready to advise NOM whether it is considered to be a “political committee,” but the Board recognizes that, in the event that it advises that NOM is not a “political committee,” the Board may not change its mind without giving NOM the prior notice required by Williams v. Sclafani, 444 F.Supp. 906, 912 (S.D.N.Y.1978), aff'd sub nom. Williams v. Velez, 580 F.2d 1046 (2d Cir.1978). Furthermore, if the Board were unreasonably to delay either its response to NOM’s inquiry or its notice of a change of mind, that circumstance would surely warrant NOM’s prompt return to court. See Hirschfeld v. Board of Elections of City of New York, 984 F.2d 35, 40 (2d Cir.1993) (prohibiting elections board to change its mind after undue delay). Thus, it is simply not so, as the majority contends, that “NOM would have no warning of imminent enforcement by the Board of Elections, beyond NOM’s own knowledge that it was violating the law.” [1] [Op. P. 691]
Instead of obliging NOM to inquire of the Board of Elections whether it is a “political committee,” the majority returns this case to the District Court for a ruling on NOM’s constitutional claims. That course, and the inevitable appeal, will likely precipitate far-reaching constitutional rulings that would be entirely avoided if the Board of Elections determines, upon a proper inquiry, that it does not consider NOM to be a “political committee.”
No doubt NOM would be interested in knowing whether New York would violate the First Amendment if the Board of Elections, if asked, were to determine that NOM was a “political committee,” but Federal courts do not sit to satisfy litigants’ intellectual curiosity. I respectfully dissent.

. The majority’s footnote 8 observes that an inquiry by NOM to the Board of Elections is not required “before an organization can be labeled a 'political committee.’ ” Quite so. But the absence of a state law inquiry requirement is entirely irrelevant to whether federal court ripeness requirements oblige a plaintiff to take advantage of an available inquiry procedure before launching a pre-enforcement challenge.