**In re William T. CONNELLY, Debtor.**

**Bankruptcy No. 93–20873.**

United States Bankruptcy Court,
W.D. New York.

Aug. 6, 1993.

See also 1995 WL 822677.

William T. Connelly, Bath, NY, Pro se.

George M. Reiber, Trustee, Rochester, NY.

JOHN C. NINFO, II, Bankruptcy Judge.

On April 20, 1993, the Debtor, William T. Connelly, (the "Debtor") filed a petition initiating a Chapter 13 case (the "1993 Case"). On July 6, 1993, the Court entered an Order denying confirmation of the Debtor's proposed Chapter 13 plan and dismissing the case pursuant to the provisions of Section 109(g)(2).[1] Pursuant to Rule 8005, the Debtor has requested a stay of a rescheduled mortgage foreclosure sale of his residence pending his appeal of the July 6, 1993 Order.

## BACKGROUND

The 1993 Case is the fourth Chapter 13 case filed by the Debtor since 1985. A 1985 case (the "1985 Case") was dismissed in February, 1989 because of the Debtor's failure to make the payments required by a confirmed Chapter 13 plan. A 1989 case (the "1989 Case"), filed seven months after the dismissal of the 1985 Case, was dismissed in December, 1989, again because of the Debtor's failure to make the payments required by a confirmed plan. In the 1989 Case, because of the many difficulties encountered in the 1985 and 1989 Cases, the Court[2] included in its confirmation order a specific provision automatically dismissing the case if the plan payments were not made when due.

On April 3, 1992, less than seven months after the 1989 Case was dismissed, the Debtor, *pro se,* filed his third Chapter 13 case (the "1992 Case"). By the Debtor's own admission, the 1992 case was filed to stop a pending state court mortgage foreclosure sale of his residence by Bath National Bank ("Bath National"), which holds the first mortgage on the residence, and to prevent the possible loss of the residence because of unpaid real estate taxes, some going as far back as 1985, for which a number of tax deeds have been issued to Steuben County. The residence is actually a multi-unit dwelling, more in the nature of an apartment building.

On May 29, 1992, an initial Section 341 meeting of creditors was conducted by the standing Chapter 13 Trustee (the "Trustee"). On that same date, the Debtor forwarded a complaint to the Office of the United States Trustee ("U.S. Trustee") regarding the Trustee's conduct in the Debtor's pending

---

1. Section 109(g) provides:

   Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
   (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
   (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

2. At that time, the Honorable Edward D. Hayes was the Bankruptcy Judge.

and prior Chapter 13 cases, which requested that the Trustee be removed. After a series of responses and an investigation, the U.S. Trustee determined that the Trustee should not be removed as requested by the Debtor.

On June 25, 1992, the Trustee filed an objection to the confirmation of the Debtor's proposed plan on the grounds that: (1) the plan was not filed in good faith and was not feasible; (2) the Debtor had failed to provide various items requested by the Trustee in connection with the case; and (3) the Trustee believed that the Debtor was not eligible to be a Chapter 13 debtor by reason of the provisions of Section 109(g)(1).

After a series of adjourned Section 341 meetings and confirmation hearings, the Trustee made a motion, pursuant to Section 1307(c), to dismiss the 1992 Case for cause, principally because of the Debtor's continuing failure to provide requested information to the Trustee. On September 15, 1992, a conditional order of dismissal was entered providing that the case would be dismissed unless the Debtor complied with certain requirements, including providing necessary information to the Trustee.

Although the Debtor, for unexplained reasons, failed to appear at an adjourned September 25, 1992 confirmation hearing, the Court adjourned the confirmation hearing to October 30, 1992. At the October 30, 1992 confirmation hearing, the Trustee renewed his objections to the confirmation of the Debtor's plan on the grounds that the plan was not filed in good faith, the plan was not feasible and the case should be dismissed pursuant to the provisions of Section 109(g)(1). The Trustee's position was that the dismissal of the 1989 Case automatically resulted upon the Debtor's failure to make payments specifically required by the Court in the confirmation order. Therefore, the Trustee asserted that the Debtor's failure to make the required payments was a willful failure to abide by a court order within the meaning of Section 109(g)(1), which made the Debtor ineligible to file within 180 days of the dismissal of the 1989 Case.

Representatives of Bath National appeared at each of the Section 341 meetings held in the 1992 Case on May 29, 1992, July 31, 1992 and August 28, 1992, and they appeared at the confirmation hearings held on August 28, 1992 and October 30, 1992. At the October 30, 1992 confirmation hearing, the attorney for Bath National expressed the bank's concerns about the Debtor's history in Chapter 13, the substantial outstanding real estate taxes due on the Debtor's residence which were increasing and priming the Bank's mortgage lien, and the prepetition and postpetition mortgage arrearages due to Bath National (the Debtor had made no postpetition mortgage payments in the six months that the 1992 Case had been pending). At the confirmation hearing, Bath National requested that confirmation of the Debtor's plan be denied and that the Section 362 stay be lifted so that it could continue its mortgage foreclosure or, in the alternative, that the Court otherwise provide it with adequate protection in connection with any confirmed plan, including requiring the Debtor to immediately bring all postpetition mortgage payments current and make future payments when due. The Court treated Bath National's requests as a motion for relief from the automatic stay pursuant to Section 362 made in accordance with Rule 9013 at a confirmation hearing.

After reviewing the totality of the facts and circumstances before the Court including the objections of the Trustee and Bath National, the request for relief by Bath National, the history of the Debtor in this Court and the Debtor's protestations that his plan was feasible and that he should be given a chance to prove it, the Court confirmed the Debtor's plan. At that time, the Court clearly advised the Debtor that it was giving him one last chance to prove that he could finally meet his promises, including that he could bring all postpetition mortgage payments current within a reasonable time. In response to the request of Bath National for relief from the stay, the Court required that the confirmation order provide for the immediate lifting of the stay as to Bath National and the dismissal of the 1992 Case should the Debtor not cure all postpetition mortgage arrearages due to Bath National by November 30, 1992 and continue to make plan payments and postpetition mortgage payments

when due as well as to pay all future real estate taxes as they became due. On November 30, 1992, before the stay would have been lifted and the case dismissed because of the Debtor's failure to cure all postpetition mortgage arrearages to Bath National, the Debtor made a motion, pursuant to Section 1307(b), to voluntarily dismiss the 1992 Case. Because Section 1307(b) gives the Debtor the absolute right to dismiss a Chapter 13 case, the Court granted the Debtor's motion on the January 29, 1993 return date. In the ten months that the 1992 Case was pending, the Debtor paid no postpetition mortgage payments to Bath National and no postpetition real estate taxes.

The 1993 Case was filed by the Debtor, *pro se*, within 74 days after the entry of the Order dismissing the 1992 Case and within three days of a rescheduled sale in the Bath National pending state court mortgage foreclosure proceeding, clearly to stop that sale.

On his schedules, the Debtor valued his residence at $35,000. This $35,000 value is less than the outstanding real estate tax liens and mortgage balance due to Bath National Bank as of August 1, 1993. The Debtor's proposed plan in the 1993 Case provided for the payment of $400.00 per month to the Trustee for a period of sixty (60) months with the arrearages due to the real estate taxing authorities and Bath National to be paid through the plan and ongoing mortgage payments and real estate taxes to be paid outside the plan. Schedule J filed by the Debtor showed excess income available on a monthly basis of exactly $400.00, the amount proposed to be paid to the Trustee under the plan.

On May 21, 1993, an initial Section 341 meeting and a hearing on confirmation were held. At that time, the Trustee indicated that he believed that both the Debtor's case and the proposed plan had not been filed in good faith, the plan was not feasible and the Debtor was ineligible for Chapter 13 relief by reason of the provisions of Section 109(g)(2). In order to afford the Trustee an opportunity to file a formal motion to dismiss and written objections to confirmation, the confirmation hearing was adjourned to June 25, 1993.

By motion returnable June 25, 1993, the Trustee requested that the Court dismiss the Debtor's case pursuant to the provisions of Section 109(g)(2) or, in the alternative, that it deny confirmation of the Debtor's proposed Chapter 13 plan. The Trustee asserted that the Debtor was not eligible to be a debtor in Chapter 13 since he had filed the 1993 Case within 180 days after he had obtained the voluntary dismissal of a prior case following the request by Bath National for relief from the automatic stay provided by Section 362. As to the good faith and feasibility of the Debtor's proposed plan in the 1993 Case, the Trustee asserted that: (1) this was the Debtor's fourth Chapter 13 plan in eight years, filed after three previous plans had been dismissed because the Debtor failed to make the required payments; (2) as a result of the Debtor's four Chapter 13 cases, he had essentially obtained the benefit of the automatic stay for a period which exceeds the five year maximum Chapter 13 plan term envisioned by Congress in Section 1322(c); (3) the four cases filed by the Debtor have been essentially to prevent the secured creditors with liens on his residence from exercising their lawful rights to foreclose; (4) the stated purpose of the 1992 and 1993 Cases was to stop foreclosure sales by Bath National; (5) despite the Debtor's attempts to work with an accountant and to rent more of his residence and use it for a flea market, which the Debtor speculatively hoped would generate additional income with which to make plan payments, in fact the Debtor's income was the same as during the 1992 Case and in that case he was only able to pay into his plan $413.00 over a nine month period which was the equivalent of one plan payment; and (6) because of the increased arrearages due to Steuben County and Bath National, the minimum required monthly plan payment would have to be $502.00, an amount the Debtor's *own budget indicated he could not pay.*

At the June 25, 1993 adjourned confirmation hearing and hearing on the Trustee's motion to dismiss, the Court heard from the Trustee, representatives of Bath National, the Debtor, and even the Debtor's sister, who asked to be heard. Based on all of the facts and circumstances before the Court in connection with the Debtor's 1993 Case and the

Court's knowledge of pleadings and proceedings in the Debtor's 1992 Case, the Court denied confirmation of the Debtor's proposed plan finding that the Debtor's case and his plan had not been proposed in good faith within the meaning of Section 1325(a)(3) and the proposed plan was not feasible within the meaning of Section 1325(a)(6). In addition, the Court granted the Trustee's motion to dismiss the case finding that the Debtor was not eligible to be a debtor in the 1993 Case, since he had obtained a voluntary dismissal of the 1992 Case following the making of a request by Bath National for relief from the Section 362 stay and the Court granting it conditional relief.[3]

On July 6, 1993, an order dismissing the Debtor's case and denying confirmation of his plan was entered. In view of the Debtor's history in Chapter 13 and the Court's view that the Debtor was manipulating the Bankruptcy Code and the Bankruptcy System to the detriment of his secured creditors, using the automatic stay provided by Section 362 as a sword rather than as a shield, and exhibiting bad faith by his serial filings, the Court, to prevent further injury and expense to the secured creditors, included in the order dismissing the Debtor's case a provision that, "if the debtor files another bankruptcy petition under any Chapter at any time prior to the Bath National Bank mortgage being current and the full payment of all real estate taxes due and owing on said property at the point of filing, that any foreclosure preceding [sic] commenced by any entity can be continued and will not be considered a violation of the automatic stay; provided that said entity apply to this Court within 10 days of the completion of said sale for an order of this Court confirming said sale and authorizing the entity to complete said sale."

On July 8, 1993, the Debtor filed a Notice of Appeal of the Court's Order dismissing his case. On July 26, 1993, the Debtor filed a motion, returnable on August 4, 1993, requesting a stay pending appeal of a foreclosure sale of the Debtor's residence by Bath National, which the Debtor advised the

Court was rescheduled for August 31, 1993. Bath National filed opposition to the Debtor's request for a stay pending appeal and the Trustee took no position on the Debtor's request.

## DISCUSSION

■ A request for a stay pending appeal is addressed to the discretion of the Court, and requires that the Court take into consideration the following four factors:

1. The likelihood that the party seeking the stay will prevail on appeal;

2. The prospect of irreparable injury to the moving party which might result without the stay;

3. The relative certainty that no substantial harm will come to other parties if the stay were issued; and

4. The relative absence of harm to the public interest if the stay were granted. *See Hirschfeld v. Board of Elections,* 984 F.2d 35, 39 (2d Cir.1993).

■ Each of these four factors, when carefully considered, must be resolved against the Debtor.

This Court believes that there is *little likelihood that the Debtor can or will succeed on his appeal* of this Court's July 6, 1993 Order. Both the language and the underlying purpose and policy of Section 109(g)(2) clearly make the Debtor ineligible to file the 1993 Case. The purpose and intent of Section 109(g)(2) is to preclude a debtor from denying a secured creditor the benefit of a termination of the automatic stay by filing another case reimposing the stay. *In re Berts,* 99 B.R. 363, 365 (Bankr.N.D.Ohio 1989). Section 109(g)(2) addresses the situation in which a debtor files a bankruptcy case to stay a foreclosure and when the creditor seeks relief from the automatic stay, the case is voluntarily dismissed by the debtor. Then the debtor refiles prior to the creditor completing its next attempt to foreclose and thereby continually frustrating the creditor's

---

**3.** Had the Trustee included in his motion to dismiss a request that the Court dismiss the case pursuant to provisions of Section 1307(c) or Section 105(a), the Court, in its discretion, would also have dismissed the Debtor's 1993 Case pursuant to those provisions of the Bankruptcy Code.

attempts at foreclosure. *In re Patton,* 49 B.R. 587, 589 (Bankr.M.D.Ga.1985). This section is a Congressional response to the perceived abuse of Section 1307(b), which allows a Chapter 13 debtor the absolute right to dismiss his case at any time so long as the case is not converted, because the debtor can, by dismissing and refiling, avoid the consequences of a creditor's obtaining relief from the stay since refiling brings into play the automatic stay of Section 362(a). *In re Keul,* 76 B.R. 79, 80 (Bankr.E.D.Pa.1987).

Clearly Section 109(g)(2) is designed to prevent the very series of actions taken by this Debtor in the 1992 Case and in the filing of the 1993 Case. Not to dismiss the 1993 case pursuant to Section 109(g)(2) would allow the Debtor to frustrate the legitimate attempts of Bath National and Steuben County to exercise their rights as secured creditors, especially when, as here, the Debtor has continued to fail to make payments to Bath National or the real estate taxing authorities. As Bankruptcy Judge for the Eastern District of Pennsylvania Bruce Fox expressed in *In re Keul,* "However one interprets the language of section 109(g)(2), Congress clearly determined that a debtor cannot voluntarily dismiss a bankruptcy case after a creditor has obtained relief from the stay and then file another bankruptcy petition within 180 days solely to avoid the consequences of the earlier order granting relief. To do so is an abusive use of section 362(a) and 1307(b)."

As to *substantial harm to other parties,* it is clear from a review of the 1992 and 1993 Cases that the Debtor's actions have caused the Bath National secured debt to increase substantially, not only by continuing interest accrual but by requiring Bath National to incur substantial and unnecessary additional expenses in both the bankruptcy and state court proceedings, including attorneys' fees and publication costs, all in an attempt to enforce its lawful contractual rights. As set forth above, the outstanding tax liens (now in excess of $16,000) and mortgage balance now due exceed the scheduled value of the Debtor's residence. At the hearing on the request for a stay pending appeal, the Debtor expressed that he now believed that the property was worth more than $35,000. However, the Debtor acknowledged that it was quite reasonable to conclude that at a forced sale of the property less would be received than the amount necessary to pay off the tax liens and the current mortgage balance due to Bath National. Therefore, a stay pending appeal, which would result in increased interest accruing on the mortgage and real estate tax debts and additional expenses to be incurred by Bath National, which may not be recoverable based on the value of the collateral, would result in substantial harm to Bath National.

As to the *prospect of irreparable injury to the Debtor,* property such as the Debtor's residence is sold at foreclosure sales every day when debtors fail to perform their agreements with mortgage holders and when the facts and circumstances do not warrant a bankruptcy court staying such a foreclosure sale for the benefit of the debtor's creditors or a debtor. In this case, the Debtor's four attempts at a Chapter 13 reorganization have failed; there is no clear showing that the Debtor can now propose a plan which could be confirmed by the Court in accordance with the requirements of Section 1325; and there is not sufficient evidence before the Court that there is any value in the Debtor's residence over valid real estate tax and mortgage liens.

As to *harm to the public interest,* if the Court allowed the Debtor a stay pending appeal preventing Bath National and the taxing authorities from exercising their lawful rights, it would frustrate the clear purpose and intent of Section 109(g)(2) and enable the Debtor to obtain the very relief which this Court in its discretion, pursuant to Section 105 [4] to prevent further abuse of the Bankruptcy Code and the Bankruptcy System,

---

4. Section 105(a) provides,
the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

specifically denied him when in its order of dismissal the Court provided that no subsequent case filed by the Debtor would prevent the completion of a Bath National foreclosure sale. It would be detrimental to this Bankruptcy Court and the Bankruptcy System and, thus, to the public interest to allow this Debtor to continue to manipulate and abuse the Bankruptcy System.

## CONCLUSION

Based on the foregoing, the Court denies the Debtor's motion for a stay of a state court foreclosure sale of his residence by Bath National and any actions which may be taken by Steuben County in connection with its real estate tax liens and tax deeds on that property.

**IT IS SO ORDERED.**