**In re Clay Arthur and Lori Ann HARRIS, Debtors.**

**Bankruptcy No. 96–20015.**

United States Bankruptcy Court, W.D. New York.

March 1, 1996.

George Schmergel, Gullace, Easton & Weld, Rochester, New York, for ITT Residential Capital.

Clay A. and Lori A. Harris, Rochester, NY, pro se debtors.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On January 3, 1996, the debtors, Clay Arthur Harris and Lori Ann Harris (the "Debtors"), proceeding *pro se*, filed a petition commencing a Chapter 13 case (the "1996 Case").

The Court's records indicate that the Debtors had filed two previous *pro se* Chapter 13 cases which had each been dismissed after the Chapter 13 Trustee made a motion to dismiss because the Debtors had failed to file a Chapter 13 plan and to appear at their Section 341 meeting of creditors.

A Chapter 13 case filed by the Debtors on November 15, 1994 (the "1994 Case") was dismissed on April 18, 1995. In the 1994 Case, the Debtors failed to file the required schedules and statements but they did file a list of creditors with their petition which set forth only ITT Residential Capital ("ITT") and New York State Higher Education Services ("New York State Higher Education"). In the 1994 Case, ITT filed a proof of claim for $19,608.13, representing arrearages due on a mortgage (the "ITT Mortgage") which it held on the Debtors' residence at 99 Paige Street, Rochester, New York ("Paige Street").

A Chapter 13 case filed by the Debtors on June 26, 1995 (the "1995 case") was dismissed on September 1, 1995. In the 1995 Case, the Debtors once again failed to file the required schedules and statements but they did file a list of creditors with their petition which set forth only ITT and New York State Higher Education. In the 1995 case, ITT filed a proof of claim for $30,255.20, representing arrearages then due on the ITT Mortgage, and New York State Higher Education filed proofs of claim for $18,805.09, representing the amounts due on federally guaranteed student loans.

On January 25, 1996, the Chapter 13 Trustee filed a motion to convert the 1996 Case from a Chapter 13 case to a Chapter 7 case (the "Conversion Motion") on the grounds that the Debtors had failed to file the required schedules, statements and a Chapter 13 plan, and because it appeared that the Debtors were attempting to abuse the Bankruptcy Code. The Conversion Motion was made returnable on February 5, 1996. Prior to the return date of the Motion, the Debtors filed a Notice of Conversion pursuant to Section 1307(a), which resulted in the conversion of the 1996 Case from a Chapter 13 case to a Chapter 7 case on February 2, 1996.

In the 1996 Case, the Debtors initially filed a petition and a list of creditors which once again only set forth ITT and New York State Higher Education. Thereafter, however, on the February 2, 1996 conversion date, the Debtors filed schedules and statements which: (1) appeared to have been prepared by a typing service; (2) listed the value of Paige Street at $50,000 and the balance due on the ITT Mortgage at $34,000; (3) valued listed miscellaneous personal property and vehicles at $2,725, all but $20.00 of which was claimed as exempt; (4) listed unpaid income taxes for tax years beginning in 1986 for in excess of $52,000; and (5) listed unsecured claims of $62,590, held by fifty-nine separate entities, although some were collection agencies or attorneys for otherwise listed creditors and therefore duplicates. Some of the listed unsecured claims were shown as individual liabilities and others were shown as joint claims. These listed unsecured claims included over $10,000 for utility services owed to the Rochester Gas & Electric Corporation for Paige Street, $19,000 for utility services owed to the Rochester Gas & Electric Corporation for 255 Sawyer Street and $3,500 owed to the Penfield Federal Credit Union for a school loan.

The Debtors' schedules indicated that: (1) Clay Harris was a self-employed real estate broker with monthly income of $1,600 from real property pursuant to an attached detailed statement which was not attached; (2) Lori Ann Harris was employed as a secretary with net monthly take-home pay of $888.00; and (3) the monthly family expenses were $2,440.00, leaving the Debtors with disposable income of only $48.00 per month.

On February 5, 1996, ITT filed a Motion for Relief from Stay in connection with Paige Street and the ITT Mortgage (the "Stay Relief Motion"). The Motion was made re-

turnable on February 14, 1996 at the Court's 11:30 a.m. Motion Calendar. In the Stay Relief Motion, ITT alleged that: (1) Paige Street had a fair market value of no greater than $53,000, based on the City of Rochester tax assessment; (2) the balance then due to ITT on its Mortgage pursuant to a September 19, 1994 Judgment of Foreclosure and Sale entered by the New York State Supreme Court was $55,647.79; (3) based on its fair market value and the outstanding balance due on the ITT Mortgage, there was no equity in Paige Street for the Debtors or the Chapter 7 estate; (4) Paige Street was not necessary for a reorganization by the Debtors, since this was no longer a Chapter 13 case; (5) ITT did not have adequate protection of its interest in Paige Street, since there was no equity in the property and the Debtors had not made any mortgage payments since May, 1993 prior to their filing of the 1994 Case; and (6) the Debtors' 1996 Chapter 13 case was filed in bad faith since it was filed one day before the scheduled foreclosure sale of Paige Street with no reasonable possibility of a successful Chapter 13 case and for the sole purpose of delaying the foreclosure sale.

On February 12, 1996, the Debtors filed an Answer to the Stay Relief Motion which generally denied the allegations made by ITT and alleged that the Debtors were in the process of applying to H.U.D. for assistance.

On the February 14, 1996 return date of the Stay Relief Motion, the Court noted for the record that the Debtors had not appeared. Based on the pleadings before it, the Court found that ITT had met its burdens under both Section 362(d)(1) and Section 362(d)(2) and it granted the Stay Relief Motion. The Court further found that because the Debtors: (1) had a history of serial bankruptcy filings which were timed to stop ITT from completing its State Court mortgage foreclosure sales; (2) had given incorrect information (the lists of creditors) when filing their Chapter 13 petitions; and (3) had failed in any way to prosecute their Chapter 13 cases, there appeared to be an abuse of the Bankruptcy Code and the Bankruptcy

System which warranted the additional relief which the Court had granted to movants such as ITT in similar cases.[1] The Court indicated that the Order granting relief from the stay could also provide that, should the Debtors, or any individuals obtaining title from the Debtors, file a bankruptcy case in the Western District of New York prior to: (a) the ITT Mortgage being brought current by the payment of all unpaid monthly mortgage payments and all escrow advances made by ITT in connection with Paige Street for insurance or real estate taxes; and (b) all outstanding real estate taxes on Paige Street being paid in full, ITT could continue with any scheduled State Court mortgage foreclosure sale of Paige Street without being in willful violation of the automatic stay which would be provided by Section 362 upon the filing of such a petition, provided that within ten days from the sale, a hearing, on notice to the U.S. Trustee, any Trustee, the Debtors and the Debtors' attorney, if any, was held in the Bankruptcy Court for retroactive relief from the stay and for the confirmation of the foreclosure sale.

After the Stay Relief Motion was heard and decided, all of the other matters scheduled for the Court's 11:30 Motion Calendar on February 14, 1996 were heard and the Court had recessed, the Debtors appeared at the Bankruptcy Court claiming that they had been caught in traffic and indicating that they wished to be heard on the Stay Relief Motion. To insure that the Debtors, proceeding *pro se*, were given a full and complete opportunity to respond to the Motion, the matter was adjourned with the consent of the attorneys for ITT to February 21, 1996.

On the February 21, 1996 return date, the Debtors appeared and were advised by the Court as to its ruling on February 14, 1996 when they had failed to timely appear. The Debtors confirmed to the Court that they were attempting to obtain funds from H.U.D., but presented no details regarding their prospects for obtaining such a loan. The Debtors also confirmed that neither of them were currently employed. Clay Arthur Harris indicated that he was attempting to

---

1. *See, e.g., In re Connelly*, No. 93–20873, 1993 WL 819884 (Bankr.W.D.N.Y. Aug. 6, 1993), *aff'd*, *Connelly v. Bath Nat'l Bank*, No. 93–CV–6449L (W.D.N.Y. Apr. 13, 1995).

sell Paige Street, which was listed for sale at $48,000, but which he believed could be sold for $55,000. However, Mr. Harris presented no details regarding any actual or prospective buyer or any analysis as to why he believed the property would sell for $55,000. The Court emphasized to the Debtors that there was in excess of $55,000 currently due to ITT on its Mortgage pursuant to the State Court Judgment of Foreclosure and Sale which was final and non-appealable, so that there would be no excess proceeds from the sale of Paige Street for them or the Chapter 7 estate even if the property did sell for $55,000.

At the hearing on the February 21, 1996 return date, the Debtors further indicated that they had no objection to the inclusion in an order granting relief from the stay of the provisions regarding a subsequent filing if the ITT Mortgage arrears had not been brought current.

## DISCUSSION

Abusive serial filings by debtors which are designed to frustrate the completion of various State Court proceedings, such as mortgage foreclosure proceedings, are a problem both nationally and in this District.

Section 362(a)[2] provides for an automatic stay, applicable to all entities, upon the filing of a bankruptcy petition. However, Section 362(d)[3] provides that the Court, on request of a party in interest and after notice and a hearing, can grant relief from the stay provided under subsection (a), such as by terminating, annulling, modifying or conditioning such stay.

This Court believes that by reason of Section 105(a)[4] and Section 362(d), which provides that in an appropriate case the Court can annul the automatic stay provided by Section 362(a), it has the power to provide as additional relief to a mortgage holder whose prior mortgage foreclosure proceedings have been frustrated by a series of bad faith filings by one or more debtors, the ability to continue a foreclosure sale, notwithstanding the filing of a new petition and the provisions of Section 362(a), as long as such sale is subject to a timely hearing before the Bankruptcy Court to retroactively annul the stay and confirm the foreclosure sale.

At the time of the hearing to confirm the sale, if the current petition is found to have been filed in bad faith and relief is warranted under Section 362(d), the Court can exercise its discretion to annul the Section 362(a) automatic stay retroactively and confirm the foreclosure sale.[5] If, on the other hand, the

2. Section 362(a) provides in part that:
   Except as provided in subsection (b) of this section, a petition filed under Section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
   (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
   (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
   (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
   (4) any act to create, perfect, or enforce any lien against property of the estate; [and]
   (5) any act to create, perfect, or enforce against property of the debtor any lien to the

extent that such lien secures a claim that arose before the commencement of the case under this title.

3. Section 362(d) provides:
   On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay.

4. Section 105(a) provides that:
   The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

5. Several circuits have fashioned relief of this nature, allowing bankruptcy courts to grant *nunc*

debtor has filed a petition under Chapter 11, 12 or 13, and the evidence produced at the hearing to confirm the foreclosure sale indicates that the petition was not filed in bad faith and because of changed circumstances the debtor has a reasonable prospect of reorganizing, the Court can deny confirmation of the foreclosure sale and declare it to be void.

## CONCLUSION

The stay provided by Section 362(a) in the 1996 Case is terminated to allow ITT to continue its State Court mortgage foreclosure proceeding.

Should either or both of the Debtors, or any entity to which the Debtors convey Paige Street, file a bankruptcy petition before the ITT Mortgage foreclosure sale takes place or the ITT Mortgage is brought current by the payment of all unpaid monthly mortgage payments and all escrow advances made by ITT in connection with Paige Street for insurance or real estate taxes, or before all outstanding real estate taxes on Paige Street are paid in full, ITT is authorized to continue any scheduled State Court mortgage foreclosure sale of Paige Street without being in willful violation of the automatic stay provided by Section 362(a) upon the filing of any such petition, provided that within ten (10) days from the sale, a hearing, on notice to the U.S. Trustee, any Trustee, the Debtors and the Debtors' attorney, if any, in that subsequently filed case, is held in the Bankruptcy Court for retroactive relief from the stay and for confirmation of the foreclosure sale.

Nothing in this Decision and Order shall affect the rights of the Chapter 7 Trustee to any surplus monies arising from the foreclosure sale of Paige Street, and within thirty (30) days of any receipt by it, ITT, or any assignee, shall provide the Trustee with a copy of the referee's report of sale or other documents containing an accounting of the funds, and ITT is allowed attorney's fees in connection with this matter only to the extent that those fees are generated from the

foreclosure sale or provided for in a reaffirmation agreement.

**IT IS SO ORDERED.**

*pro tunc* relief from the automatic stay and validating actions taken during a stay. For a concise summary of decisions in the Third, Fifth, Sixth, Eleventh and Ninth Circuits which have addressed this issue, *see Khozai v. Resolution Trust Corp.*, 177 B.R. 524 (E.D.Va.1995).