**In re Patricia P. BURTON, Debtor.**

**Bankruptcy No. 96–20517.**

United States Bankruptcy Court,
W.D. New York.

May 16, 1996.

George M. Reiber, Chapter 13 Trustee, Rochester, New York.

John A. Belluscio, Rochester, New York, for debtor.

George Schmergel, Rochester, New York, for Fleet Mortgage Corp.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

## BACKGROUND

On February 2, 1995, Patricia P. Burton (the "Debtor") filed a petition initiating a Chapter 13 case (the "Initial 13 Case"). On her schedules, she listed her ownership of a residence at 153 Rugby Avenue, Rochester, New York ("Rugby Avenue"), which she valued at $75,000.00 subject to a mortgage lien in favor of Fleet Mortgage Corp. ("Fleet") in the amount of $58,000.00 (the "Fleet Mortgage"). The only other creditor scheduled by the Debtor was the Rochester Gas & Electric Company which had provided unpaid utility services to Rugby Avenue in the amount of $2,341.00.

The Debtor's Chapter 13 Plan (the "First Plan"), which was confirmed by an Order entered March 22, 1995, provided for: (1) monthly payments to be made to the Trustee in the amount of $373.00 for a period of sixty (60) months to be deducted from the Debtor's wages at St. Mary's Hospital where she was a nurse's aide; (2) the payment in full of the arrearages due on the Fleet Mortgage in the amount of $14,263.10, together with interest; and (3) the payment in full of the sole unsecured creditor.

At the time of the Confirmation Hearing on March 13, 1995, by reading a prepared speech given at all Chapter 13 confirmation hearings, the Court stressed to all of the debtors present the importance of making their post-petition mortgage payments during the term of their Chapter 13 plans.

On September 25, 1995, Fleet filed a Motion for Relief from the Automatic Stay provided by Section 362 (the "Fleet Stay Motion"). The Motion was made pursuant to the Court's default procedure, which requires that the respondent file written opposition with the Court by no later than three business days prior to the scheduled return date of the motion, or the matter is stricken from the calendar. The Fleet Stay Motion alleged that: (1) the market value of Rugby Avenue pursuant to an inspection report was $60,-000.00, less than the outstanding mortgages and liens against the property; and (2) the Debtor had failed to make four post-petition mortgage payments totaling $3,519.34. Although the Court had received no written opposition from or on behalf of the Debtor, a Conditional Order Lifting the Stay (the "Conditional Order"), which included the written consent of the Debtor, was received and entered by the Court on October 12,

1995. The Conditional Order provided that: (1) within thirty (30) days of the entry of the Conditional Order, the Debtor was to pay to the attorneys for Fleet all unpaid post-petition mortgage payments for the months of May, 1995 through October, 1995, together with interest, late charges and attorney's fees, in the total amount of $5,776.34; and (2) should the Debtor fail to pay this amount within the thirty-day period, or to pay any subsequent post-petition mortgage payment within thirty days of its due date, commencing with the November 1, 1995 payment, the automatic stay would be modified without further Court order to permit Fleet to continue its prepetition foreclose of the Fleet Mortgage on Rugby Avenue.

On March 1, 1996, the Debtor filed a voluntary petition commencing a second Chapter 13 case (the "Second 13 Case").

On the morning of March 1, 1996, the Court had filed a Decision and Order in *In re Harris,* 192 B.R. 334 (Bankr.W.D.N.Y.1996). In that Decision, the Court granted, as additional relief to a mortgage holder who had filed a motion to lift the stay where the debtors, by a series of bad faith filings, had frustrated the mortgage holder's ability to continue a mortgage foreclosure proceeding, the ability to continue with its mortgage foreclosure sale, notwithstanding the filing of a subsequent petition, as long as the foreclosure sale was subject to confirmation at a timely hearing before the Bankruptcy Court. At such a hearing the Court would have the ability to either: (1) retroactively annul the stay and confirm the foreclosure sale if it was determined that the pending filing was filed in bad faith and there was no equity for the estate in a Chapter 7 case or ability to reorganize in a Chapter 11, 12 or 13 case; or (2) if the filing was not in bad faith and there were sufficient changed circumstances that indicated the debtor could successfully reorganize in a Chapter 11, 12 or 13 case, or there was substantial non-exempt equity in the property in a Chapter 7 case, the Court could deny confirmation of the foreclosure sale and declare it to have been void.

On the afternoon of March 1, 1996, the date of the filing of the Second 13 Case, the attorney for Fleet contacted the Court and requested an emergency hearing pursuant to Section 362(f)[1], alleging that Fleet would suffer further irreparable damage if it was forced to discontinue its pending mortgage foreclosure sale on March 4, 1996 because of the Debtor's current bad faith Chapter 13 filing.[2] It was alleged by the attorney for Fleet that, since there was no equity in Rugby Avenue, the additional costs of discontinuing the foreclosure sale and then renoticing and conducting a further sale could never be recovered by Fleet.

Later on the afternoon of March 1, 1996, the Court conducted the requested emergency hearing in Chambers with the attorneys for Fleet and the Debtor. Since on all of the facts and circumstances presented it appeared that: (1) there was no equity in Rugby Avenue; and (2) the Debtor was unable to

1. Section 362(f) provides:
   Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

2. This Court will entertain and conduct such emergency hearings pursuant to Section 362(f) when it appears that a mortgagor or current owner has filed a bankruptcy petition to stop a mortgage foreclosure proceeding when a previously scheduled sale in the same mortgage foreclosure proceeding has been stayed by a prior bankruptcy petition filed on behalf of the debtor, a co-mortgagor or a prior owner, even if the hearing must be conducted telephonically from the courthouse steps where the foreclosure sale is being conducted. In this regard, attorneys filing petitions for debtors where an earlier sale in the same mortgage foreclosure proceeding has been stayed by a prior bankruptcy proceeding should anticipate such a hearing and make themselves available right up to the time of the foreclosure auction sale, if they wish to participate in any hearing and set forth the debtor's position. If the debtor's attorney is not available, a hearing may go forward without the attorney as provided in Section 362(f). As correctly pointed out by the Chapter 13 Trustee, if the pending case is a Chapter 13 case, the attorney for the mortgagee should notify the Standing Chapter 13 Trustee of any emergency hearing pursuant to Section 362(f), and should notify the United States Trustee in any Chapter 7, 11 or 12 case.

fund a confirmable plan in the Second 13 Case since her disposable income was insufficient to pay the existing Fleet Mortgage arrearages and current monthly mortgage payments over a period of sixty months, the Court ordered the stay provided by Section 362 modified so as to allow Fleet to continue with its pending mortgage foreclosure sale, provided that within ten days of the sale, there was a hearing before the Bankruptcy Court to either confirm the sale or void it if the Court determined the Debtor could fund a confirmable plan.

On March 11, 1996, a Section 341 meeting notice was sent to creditors, and on March 14, 1996 Fleet filed a Motion for Relief from the Automatic Stay to allow it to foreclose its mortgage on Rugby Avenue and to confirm the foreclosure sale conducted on March 4, 1996 (the "Second Fleet Stay Motion").

The Second Fleet Stay Motion alleged that: (1) as of March 1, 1996, the date of the petition in the Second 13 Case, there was approximately $80,960.81 due on the Fleet Mortgage, which exceeded the $60,000.00 value for Rugby Avenue set forth in an inspection report obtained by Fleet, as well as the $75,000.00 value set forth in the Debtor's schedules in the Initial 13 Case; (2) the Debtor had failed to comply with the terms of the Conditional Order in that she did not pay the arrearages within thirty (30) days of the entry of the Order, notwithstanding an October 26, 1995 letter sent from the attorneys for Fleet to the Debtor reminding her of the terms of the Order; (3) upon the Debtor's default under the Conditional Order, Fleet continued its prepetition and still pending State Court mortgage foreclosure proceeding and noticed a foreclosure sale of Rugby Avenue pursuant to the State Court's December 19, 1994 Judgment of Foreclosure and Sale; (4) on January 19, 1996, the attorneys for Fleet sent the Debtor a copy of a notice which advised her that Rugby Avenue was to be sold at foreclosure at an auction to be conducted on March 4, 1996; (5) on February 22, 1996, the attorneys for Fleet forwarded a requested letter to an attorney for the Debtor which indicated that Fleet would reinstate the Fleet Mortgage if by February 28, 1996 the Debtor brought all arrearages on the Mortgage current, which were in the amount of $23,229.76; (6) the Debtor did not make the required payment to reinstate the Mortgage; and (7) pursuant to the Court's determination on March 1, 1996, the foreclosure sale auction was held, as scheduled, on March 4, 1996, at which time Fleet was the high bidder for a price of $80,960.81, the amount then due on the Judgment of Foreclosure and Sale plus expenses. The Second Fleet Stay Motion requested that the Court confirm and ratify the foreclosure sale and annul the automatic stay in the Second 13 Case retroactively to the time of the filing of the Debtor's second petition on March 1, 1996.

On March 22, 1996, opposition was filed to the Second Fleet Stay Motion on behalf of the Debtor. The opposition, which set forth the same information presented to the Court at the emergency hearing conducted on March 1, 1996, indicated that: (1) the Debtor was in the process of obtaining an appraisal for Rugby Avenue which it believed would indicate a value of between $70,000.00 and $80,000.00; and (2) the Debtor's son, who resided in Florida, had indicated that he would: (a) sell his 1988 BMW 735, and make the proceeds available to Fleet to pay down the Fleet Mortgage arrearages; and (b) make payments to the Chapter 13 Trustee or Fleet which, together with wage order payments from the Debtor's employer, would enable the Debtor to propose and fund a plan which would pay all of the Fleet Mortgage arrearages and current mortgage payments over a five-year period.

On the March 27, 1996 return date of the Second Fleet Stay Motion, it was determined that: (1) the Debtor's appraiser had valued Rugby Avenue at between $70,000.00 and $73,000.00, so that there was no equity in the property above the Fleet Mortgage; (2) the Debtor's son had not sold his BMW, so there were no present funds available to immediately reduce the outstanding Fleet Mortgage arrearages; (3) on the Debtor's current and projected income, she could not pay her living expenses, the Fleet Mortgage arrearages and current monthly mortgage payments on the Fleet Mortgage over a sixty-month period; and (4) the Debtor's excuse for not pay-

ing her post-petition mortgage payments to Fleet in the Initial 13 Case was that her son was supposed to have made the payments, and he failed to do so.

## DISCUSSION

■ This Court grants the relief that it granted in *In re Harris* and in this case at the emergency Section 362(f) hearing only when there have been serial filings and the facts and circumstances before the Court indicate that the filing of a current case may be in bad faith and an abuse of the Bankruptcy Code and Bankruptcy System. In such circumstances relief is granted by modifying the automatic stay provided by Section 362 to allow a state court mortgage foreclosure proceeding to go forward subject to confirmation of the sale within ten days, so that the Court can determine whether the foreclosure sale should be confirmed or the debtor should be allowed to go forward in reorganization if the current filing was a Chapter 11, 12 or 13 case, or a trustee should be able to sell the property in a Chapter 7 case. At the return date of the motion to confirm the foreclosure sale, the Court expects the Debtor, who has filed a case in Chapter 11, 12 or 13, to demonstrate with reasonable certainty that its filing was not in bad faith and that there is a reasonable prospect of reorganization in its Chapter 11, 12 or 13 case.[3]

■ In this case, the Debtor failed to demonstrate at the return date of the Motion to Confirm the foreclosure sale, which was conducted more than three weeks after the March 1, 1996 emergency motion pursuant to Section 362(f), that she could propose and have confirmed a plan that would meet the requirements of Section 1322, with respect to the arrearages and future payments on the Fleet Mortgage, and Section 1325, including the requirement under Section 1325(a)(6) that the plan be feasible (the Debtor will be able to make, all payments under the plan and to comply with the plan).

In the Second 13 Case, the Debtor did not have sufficient current or projected disposable income to pay the Fleet Mortgage arrearages over a sixty-month term and keep all future Fleet Mortgage payments current. In addition, the promises of her son to sell his automobile and apply the net proceeds to the Fleet Mortgage arrearages and then supplement future plan or mortgage payments by the Debtor, as necessary, to insure that the Fleet Mortgage arrearages and current mortgage payments could be paid over a sixty-month term, were speculative at best. By the time of the hearing to confirm the foreclosure sale the Debtor's son had failed to sell his automobile. Further, his promise to pay or supplement future plan or mortgage payments from Florida was not credible, given his failure to make the post-petition mortgage payments in the Initial 13 Case, which it was alleged he had agreed to do. Therefore, the Debtor did not demonstrate with reasonable certainty that there was a reasonable prospect for reorganization under Chapter 13, even if the second filing were permitted, because, as set forth above, she did not sufficiently demonstrate that she could propose a plan which could meet the requirements of Sections 1322(b)(3), 1322(b)(5) [4] and 1325(a)(6) [5]. Therefore, Fleet met its burden under Section 362(d)(2) to obtain a modification of the automatic stay because there was no equity in Rugby Ave-

---

**3.** This Debtor: (1) had substantial pre-petition mortgage arrearages; (2) had substantial post-petition mortgage arrearages, notwithstanding the Court's clear explanation of the necessity to pay post-petition mortgage payments; (3) defaulted under a Conditional Order which she consented to; and (4) paid no mortgage payments for the five months between November, 1995 and March, 1996, and did not have that money escrowed and available to reduce the Fleet arrearages at the time of the filing of the Second 13 Case. With that history, it is fair and equitable to require the Debtor to demonstrate the ability to reorganize with reasonable certainty, especially when there is no equity in the real estate involved.

**4.** Section 1322(b) provides in pertinent part:

(b) Subject to subsections (a) and (b) of this section, the plan may—
(3) provide for the curing or waiving of any default; [and]
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

**5.** Section 1325(a)(6) provides:

the debtor will be able to make all payments under the plan and to comply with the plan.

nue for the Debtor and Rugby Avenue was not necessary for an effective reorganization, since the Debtor has failed to demonstrate that she had a reasonable prospect of a Chapter 13 reorganization.[6]

## CONCLUSION

In view of the facts that: (1) the Debtor has a pending Chapter 13 case covering the same indebtedness proposed to be treated by her Second 13 Case; (2) the Debtor filed the petition in the Second 13 Case for the explicit purpose of stopping the scheduled Fleet Mortgage foreclosure sale; and (3) the Debtor has failed to demonstrate with reasonable certainty a reasonable prospect of reorganization, the stay provided by Section 362(a), as it applies to the rights of Fleet to foreclose its Mortgage on Rugby Avenue be, and the same hereby is, terminated and annulled retroactively to March 1, 1996 and Fleet's March 4, 1996 foreclosure sale is confirmed.

**IT IS SO ORDERED.**

---

**6.** At this time, it is not necessary for the Court to join the debate over whether: (1) the Debtor can have two pending Chapter 13 cases which attempt to provide for the payment of substantially identical indebtedness; or (2) whether the filing of a second Chapter 13 case while a prior Chapter 13 case is pending, in order to stop a mortgage foreclosure proceeding, violates the spirit and intent of Section 109(g), even though it may not violate the specific language of that subsection.